**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Juan Sanchez-Hernandez,<br><br>Petitioner,<br><br>v.<br><br>Fred Figueroa, et al.,<br><br>Respondents. | No. CV-25-02351-PHX-DWL (MTM)<br><br>**ORDER** |

Petitioner is a citizen of Honduras who entered the United States without permission on an unknown date. (Doc. 19-1 at 3 ¶¶ 5, 6.) In 2006, Petitioner was convicted of various sex crimes in Arizona state court and sentenced to a lengthy term of imprisonment. (*Id.* at 4 ¶ 10.) On August 11, 2022, following the conclusion of her prison term, Petitioner was placed in immigration custody and had a final order of removal entered against her. (*Id.* at 4 ¶ 15. *See also id.* at 10 [actual removal order].)[1] However, on December 15, 2022, Petitioner obtained a grant of deferral of removal to Honduras under the Convention Against Torture ("CAT"). (Doc. 2-1 at 2.)

Federal law contemplates that the government will "ordinarily" secure an alien's removal during the 90-day period after the entry of a final order of removal. *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). In Petitioner's case, the government was unable to effectuate her removal during the removal period and thus agreed to release her from custody in January 2023 pursuant to an order of supervision ("OSUP"). (Doc. 19-1 at 4

---

[1] Petitioner also had a final order of removal entered against her in November 2007. (Doc. 2-1 at 8; Doc. 51 ¶ 1.)

¶ 21.  *See also* Doc. 2-1 at 8-12 [actual OSUP].)

On June 19, 2025, Petitioner was arrested by ICE and placed in immigration detention.  (Doc. 19-1 at 5 ¶ 23.)  Petitioner then initiated this action, in which she seeks habeas relief under 28 U.S.C. § 2241.  (Doc. 1.)  On August 4, 2025, following a series of hearings, the Court ordered Respondents to release Petitioner from immigration custody on the ground that ICE had failed to comply with 8 C.F.R. § 241.13 when detaining her and purporting to revoke her OSUP.  (Docs. 33 [minute entry], 38 [transcript].  *See also* Doc. 47 [summarizing procedural history].)

On September 12, 2025, following her release from custody, the Department of Homeland Security ("DHS") moved to reopen Petitioner's withholding-only proceedings to designate Mexico as an alternate country or removal.  (Doc. 51 ¶ 33.)

On October 10, 2025, Petitioner was once again arrested by ICE and once again placed in immigration detention.  (*Id.* ¶ 35.)  That same day, Petitioner received a "Notice of Revocation of Release," which asserted that the revocation of her OSUP was justified based on "changed circumstances in your case."  (Doc. 51-6.)  Six days later, on October 16, 2025, Petitioner participated in an initial informal interview, during which she disputed the basis for the revocation decision.  (Doc. 51-7.)

On November 18, 2025, an Immigration Judge denied Petitioner's application for withholding of removal to Mexico under CAT.  (Doc. 51-4.)  Petitioner has since filed a notice of appeal to the Board of Immigration Appeals (Doc. 51-5) and also filed a preemptive petition for review with the Ninth Circuit.  *Sanchez Hernandez v. Bondi*, No. 25-7080.

On December 9, 2025, Petitioner filed a second amended habeas petition under § 2241 ("SAP") that rases four claims: (1) her current detention violates 8 U.S.C. § 1231(a)(6) and *Zadvydas* because her removal is not significantly likely to occur in the reasonably foreseeable future; (2) her redetention in October 2025 violated the regulations regarding revocation of OSUPs set forth at 8 C.F.R. § 241.4 and § 241.13, the *Accardi* doctrine, and her procedural due process rights; (3) her redetention in October 2025 was

also arbitrary and capricious in violation of the Administrative Procedure Act; and (4) her "removal to any third country without adequate notice and an opportunity to apply for relief under the Convention Against Torture would violate her due process rights." (Doc. 51 ¶¶ 87-99.) After reviewing the SAP, the Court ordered expedited briefing (Doc. 53), which the parties have now provided (Docs. 54, 55).

The first three claims in the SAP challenge the legality of Petitioner's detention. The Court will focus on the first claim—a claim of unlawfully prolonged detention under *Zadvydas*—because it is dispositive. The petitioners in *Zadvydas* were aliens who had been ordered removed from the United States, had not been removed during the removal period, and were being held in immigration custody pursuant to 8 U.S.C. § 1231(a)(6) pending the completion of the removal process. The question presented in *Zadvydas* was "whether this post-removal-period statute authorizes the Attorney General to detain a removable alien *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal." 533 U.S. at 682. The Court resolved that issue as follows:

> [W]e think it practically necessary to recognize some presumptively reasonable period of detention. . . . While an argument can be made for confining any presumption to 90 days, we doubt that . . . Congress . . . believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701.

In their response brief, Respondents "do not dispute that the post-removal-period is long expired and that Petitioner's time in immigration detention has exceeded the presumptively reasonable six-month limit." (Doc. 54 at 4.)  Nevertheless, Respondents contend that Petitioner's detention remains permissible under *Zadvydas* because "Petitioner's removal to Mexico is significantly likely to occur as soon as Petitioner's appeal of the Immigration Judge's order denying her withholding to Mexico is resolved, and Petitioner has not provided any reason to believe that she will not be removed to Mexico when her appeal is complete.  Unlike the petitioners in *Zadvydas*, Petitioner's detention is not 'indefinite and potentially permanent.'  She is being detained pending the completion of withholding-only proceedings that she voluntarily initiated.  Those proceedings are finite.  She failed to obtain withholding-only relief before the Immigration Court, is appealing that decision, and absent any diplomatic of logistical barriers, she will be removed to Mexico when her appeal is complete." (*Id.*)  In reply, Petitioner argues, *inter alia*, that "even if [Respondents] were to prevail at both the BIA and the Ninth Circuit, there may still be 'diplomatic' or 'logistical' barriers that would prevent her removal to Mexico . . . .  A remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future.  Respondents must show evidence of progress in negotiating her repatriation.  Respondents have wholly failed to do so and Petitioner must be released." (Doc. 55 at 2, cleaned up.)

Petitioner has the better of this argument.  Obtaining an order authorizing Petitioner's removal to Mexico is not the same thing as establishing a significant likelihood that Petitioner will in fact be removed to Mexico in the reasonably foreseeable future pursuant to that order.  Petitioner is a citizen of Honduras, not Mexico, and although Respondents previously asserted (in response to Petitioner's initial motion for a temporary restraining order) that "Mexico has agreed to accept her" (Doc. 19 at 13), Respondents then acknowledged in a post-hearing submission that this representation was inaccurate: "The Government therefore corrects and clarifies its Response in Opposition to the Motion for TRO/PI and states that, as of today's date [July 15, 2025], Mexico has not affirmatively

agreed to accept Petitioner and is generally declining to accept third country removals." (Doc. 20 at 2 ¶ 5.)

Respondents have not come forward with any evidence suggesting that Mexico's position has changed since they filed that acknowledgement. Instead, Respondents simply contend that "Petitioner has not provided any reason to believe that she will not be removed to Mexico when her appeal is complete." (Doc. 54 at 4.) But Petitioner *has* provided such a reason—namely, Respondents' previous concession that Mexico had not agreed to accept her and was generally refusing to accept third-country removals. And because Petitioner has spent more than six months in custody, the burden falls onto Respondents to disprove that reason. *Cesar v. Achim*, 542 F. Supp. 2d 897, 903 (E.D. Wisc. 2008) ("Within the six-month window, the detainee must prove the unreasonableness of detention, and courts must accord great deference to Executive Branch determinations based on foreign policy expertise and administrative necessity. After the expiration of six months, the detainee need only offer a valid reason why removal is unforeseeable, which the government must then disprove. And as time passes, the burden on the government increases accordingly."). Respondents have not met that burden. *Compare Prieto-Romero v. Clark*, 534 F.3d 1053, 1063-64 (9th Cir. 2008) (rejecting *Zadvydas* claim where "the government introduced evidence showing that repatriations to Prieto-Romero's country of origin, Mexico, are routine" and there was "no evidence that Prieto-Romero is unremovable because the destination country will not accept him" and contrasting that situation with *Zadvydas*, where "[r]emoval was not reasonably foreseeable . . . because no country would accept the deportees").

Accordingly, Petitioner is entitled to habeas relief based on Count One of the SAP. Respondents must immediately release Petitioner from custody, "subject to the same conditions ordered before her October 2025 detention . . . [with] only an annual check-in with ICE with no ankle or other electronic monitoring permitted." (Doc. 51 at 37.)[2] This

---

[2] Although the initial release order in August 2025 specified that Petitioner should be "released from custody, subject to the conditions of release that applied before the challenged revocation decision" (Doc. 33), Petitioner has presented evidence that "ICE failed to comply with the Court's directive to restore those prior conditions," both by

conclusion makes it unnecessary to resolve Counts Two and Three of the SAP, which simply identify alternative reasons for challenging the legality of Petitioner's detention.

In addition to seeking a release order based on her claims in Counts One, Two, and Three, Petitioner also seeks an order that, "prior to any future re-detention, Petitioner [must be] provided a hearing before an independent adjudicator where DHS bears the burden of justifying Petitioner's re-detention, and that the adjudicator must further consider whether, in lieu of detention, alternatives to detention exist to mitigate any risk that DHS may establish." (Doc. 51 at 36-37.) Although it is understandable why Petitioner would make this request—this is, after all, the second time the Court has ordered Respondents to release Petitioner from custody—the Court is unpersuaded that this particular form of relief is permissible or appropriate here. As discussed in prior orders in this case (Doc. 47 at 3), aliens in Petitioner's situation do not have a constitutional right to a pre-detention hearing before a neutral decisionmaker. *Cf. Kuot v. Bondi*, 2025 WL 3763930, *4 (W.D. Wash. 2025) ("Petitioner contends if this Court orders release under *Zadvydas*, due process requires he be given notice, an opportunity to be heard, and proof he is a flight risk or a danger to community before Respondents can redetain him. . . . However, Respondents are statutorily empowered to redetain a noncitizen who violates a condition of release under 8 C.F.R. § 214.13(i)(l) or on account of changed circumstances such as facts establishing the significant likelihood a noncitizen will be removed in the reasonably foreseeable future. Petitioner's request thus sweeps wide and fails to recognize there are circumstances supporting lawful redetention in his case that do not require a hearing before detention can occur. . . . Thus, the Court declines to grant Petitioner's request which would require a pre-redetention determination, no matter the circumstances, before he could be taken into custody.") (cleaned up).

---

temporarily requiring Petitioner "to wear an ankle monitor" and by "requir[ing] Petitioner to check in weekly—both in person and through a mobile application—conditions that had not previously been imposed. Prior to the challenged revocation decision, Petitioner was required to check in only annually and was not required to use any mobile application for supervision." (Doc. 43-1 ¶¶ 3-4.) Although it is concerning that the August 2025 release order was not scrupulously followed, the Court finds it unnecessary to take any action beyond adopting, in this release order, the proposed language provided by Petitioner.

- 6 -

Finally, Count Four of the SAP seeks an order precluding Respondents from removing Petitioner to any third country "unless and until she is provided constitutionally adequate procedures." (Doc. 51 ¶ 99.) The Court is skeptical that it possesses jurisdiction over this claim in light of 8 U.S.C. § 1252(g), and at any rate, the parties' filings establish that Petitioner has been provided with all of the process that is due—she was advised of DHS's intent to remove her to Mexico, was provided with an opportunity to seek withholding of removal to Mexico based on her claimed fear of torture, and is currently pursuing appeals of the Immigration Judge's rejection of that claim. Count Four is therefore dismissed.

Accordingly,

**IT IS ORDERED** that:

1. Petitioner is ordered the prevailing party as to Count One of the SAP.

2. Respondents must immediately release Petitioner from custody subject to the same conditions ordered before her October 2025 detention, with only an annual check-in with ICE and with no ankle or other electronic monitoring permitted.

3. Respondents must file a notice of compliance within 3 days of Petitioner's release from custody.

4. Counts Two and Three of the SAP are dismissed as moot in light of Petitioner's release from custody. Count Four of the SAP is dismissed.

5. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 5th day of January, 2026.

Dominic W. Lanza
United States District Judge